MARÍA VALDÉS YERA, demandante y apelante, *v.* PIZÁ & MARTÍNEZ, INC., demandada y apelada.

Núm. 7050.—*Sometido:* Febrero 18, 1937. *Resuelto:* Marzo 18, 1937.

*L. Santiago Carmona*, abogado de la apelante; *R. Padró Parés*, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA emitió la opinión del tribunal.

Ramón Ramos Rivera y su esposa la demandante María Valdés Yera, celebraron con Pizá & Martínez, Inc., un contrato de concesión de crédito con garantía hipotecaria. En la escritura otorgada al efecto declararon los referidos esposos que eran dueños de una finca de media cuerda que adquirieron de Ramos Hnos. & Co., Sucrs., en 27 de octubre de 1928. También hicieron constar que estaban haciendo negocios bajo el nombre de Ramos Hnos. & Co. Sucrs.; que Pizá & Martínez convino en concederles un crédito hasta la suma de $2,000, del cual irían disponiendo en mercaderías y efec-

tos; que el crédito se abría por un año venciendo éste en 7 de agosto de 1931, obligándose los deudores a satisfacer a su vencimiento las sumas que se hallasen adeudando a Pizá & Martínez, Inc.; que dicho crédito se abriría en los libros de esta última en forma de cuenta corriente; que para garantizar el pago, hasta la suma de $2,000, o la parte de la misma que en la liquidación final de la referida cuenta corriente se hallaren adeudándole los esposos Ramos Valdés, ya en persona o haciendo negocios bajo el nombre de Ramos Hnos. & Co., Sucrs., Ramón Ramos Rivera, con el consentimiento expreso de su esposa compareciente María Valdés Yera, constituye hipoteca a favor de la mercantil Pizá & Martínez, Inc., sobre el inmueble referido y también sobre otros bienes.

La cuenta corriente aparece liquidada en 20 de octubre de 1931, haciendo constar Ramón Ramos, a nombre de Ramos Hnos. & Co., Sucrs., lo siguiente:

"En mi carácter de único gestor y dueño con mi esposa de todo el activo que integra la firma Ramos Hnos. & Co., Sucrs., establecida en la calle del Dr. Veve del pueblo de Bayamón, hago constar que la liquidación que precede de la cuenta de dicha firma con los Sres. Pizá & Martínez, Inc., de San Juan, es conforme, arrojando la misma un balance a favor de dichos Sres. Pizá & Martínez, Inc., de mil doscientos sesenta y cuatro dólares con ochenta y nueve centavos, según liquidación que de mutuo acuerdo hemos practicado en esta fecha."

Más tarde entabló Pizá & Martínez, Inc., demanda contra Ramos Hnos. & Co., Sucrs., en cobro de la cantidad liquidada. Para asegurar la efectividad de la sentencia embargó la firma demandante las existencias de dos tiendas pertenecientes a la demandada, que fueron adjudicadas a Pizá & Martínez, Inc., en ejecución de sentencia, por la cantidad de $1,300.

Posteriormente se declaró la quiebra de Ramos Hnos. & Co., Sucrs., y se ordenó por la Corte Federal la suspensión de todos los procedimientos seguidos por Pizá & Martínez, Inc., contra la referida sociedad en la Corte de Distrito de

Bayamón. También esta corte dictó una providencia de acuerdo con la orden de la Corte Federal. No surge de los autos la fecha en que la petición de quiebra fué radicada en dicha corte. El Juez de Quiebra hizo constar que habiendo examinado los bienes pertenecientes al quebrado resultaba que los mismos habían sido vendidos en virtud de embargo dentro de los cuatro meses precedentes a la radicación de la petición de quiebra, habiendo dictado una orden para que los Sres. Pizá & Martínez, Inc., expusiesen las causas que tuvieran para que los bienes embargados y vendidos no fuesen entregados a Francisco Font Manzano, designado síndico por el Juez de Quiebra Jesús A. González. Pizá & Martínez, Inc., se avino a entregar los bienes, incautándose de los mismos el referido síndico Sr. Font Manzano.

La demandante, basándose en que el inmueble hipotecado es un bien privativo suyo y en que la obligación hipotecaria ha sido novada y satisfecha, solicita la cancelación de la referida hipoteca. La corte inferior dictó sentencia declarando sin lugar la demanda.

Se alega como primer error que la sentencia ha debido dictarse y no se dictó contra la parte demandada. Ésta es realmente una conclusión que no constituye un señalamiento de error. Examinando el alegato de la parte apelante vemos que el error apuntado se basa en haber declarado la corte inferior que los bienes embargados fueron adquiridos en pública subasta por Pizá & Martínez, Inc., en la suma de $1,300 para abonar a su cuenta y que esta suma no cubrió el importe de la sentencia ($1,264.89), intereses y costas, no pudiendo decirse, como alega la demandante, que la demandada ha cobrado en su totalidad la deuda y que debe cancelarse la garantía hipotecaria por razón de pago. Es verdad que de las palabras de la corte inferior puede deducirse que a su juicio la demandada cobró la cantidad de $1,264.89, importe de la deuda liquidada, pero dicho tribunal parece olvidarse de que los bienes embargados fueron entre-

gados por la firma demandada al Síndico Sr. Font Manzano. Hemos dicho que el Juez de Quiebra declaró que los bienes pertenecientes al quebrado fueron vendidos en virtud de embargo dentro de los cuatro meses precedentes a la radicación de la petición de quiebra. Debemos asumir que dicho funcionario actuó dentro de su jurisdicción al incautarse de los referidos bienes y que Pizá & Martínez, Inc., se vió obligada a entregarlos obedeciendo al requerimiento que se le hizo.

En estas condiciones no es posible sentar la conclusión de que la obligación haya sido satisfecha.

■■ Alega la apelante que al abandonar Pizá & Martínez, Inc., la garantía hipotecaria que constituía un gravamen sobre su propiedad y cobrar por otros medios la cuenta corriente que liquidó con Ramón Ramos, quedaba *ipso facto* sin valor la garantía y renunciada por un nuevo contrato que expresamente se hizo valer ante la corte en un cobro de dinero contra la sociedad Ramos Hnos. & Co., Sucrs.

La demandante ofreció prueba para demostrar que la finca hipotecada es un bien privativo de ella. No obstante, hizo constar, al constituir hipoteca sobre dicha finca en unión de su esposo a favor de Pizá & Martínez, Inc., que dichos bienes pertenecían a la sociedad de gananciales. La demandante, en su alegato, recuerda haber declarado que no ejercía el comercio, a pesar de haber hecho constar claramente en la escritura de hipoteca que ella y su esposo estaban haciendo negocios bajo el nombre de Ramos Hnos. & Co., Sucrs. También en la escritura de capitulaciones matrimoniales se hizo constar que la referida demandante aportó a la sociedad mercantil Ramos Hnos. & Co. la cantidad de $800. Fué convenido en esta escritura que la Sra. Valdés "pudiese continuar en sus gestiones mercantiles e industriales como lo había venido haciendo, sin impedimento alguno, y sin que esto se entienda que dichas gestiones mercantiles tengan o puedan tener relación alguna dentro de los fines de

la sociedad de gananciales." De modo que desde antes de casarse había la demandante invertido en la mercantil Ramos Hnos. & Co., Sucrs. fondos de su propiedad.

És claro que la demandante no puede ir contra sus propios actos, negando ahora que los bienes fuesen gananciales y que formase parte de la firma Ramos Hnos. & Co., Sucrs., si estos hechos indujeron a la demandada a conceder un crédito y a desprenderse de los bienes que en virtud de dicho crédito comprara la referida firma; pero aunque la prueba no demostrase como demuestra la intervención de la demandante en los negocios de Ramos Hnos. & Co. Sucrs., y aunque la finca resulte un bien privativo, estos hechos no pueden afectar la garantía hipotecaria constituída por la propia demandante y su esposo en favor de Pizá & Martínez, Inc.

En cuanto a que la demandada renunció a la garantía al establecer una acción en cobro de dinero, hemos sostenido que el cobro de un crédito hipotecario puede perseguirse por el procedimiento sumario que autorizan la Ley Hipotecaria y su Reglamento, o por acción civil ordinaria con sujeción a los preceptos del Código de Enjuiciamiento Civil, pudiendo el acreedor optar por uno u otro procedimiento según lo crea conveniente. El hecho de que el acreedor hipotecario haya promovido una acción personal en cobro de pesos no implica, a nuestro juicio, que se haya renunciado a la garantía.

La garantía hipotecaria no se considera renunciada y extinguida por el hecho de haber procedido el acreedor a. hacer efectiva la obligación mediante una acción ordinaria. en cobro de dinero, en vez de utilizar el procedimiento sumario de la Ley Hipotecaria. *Fossas* v. *The National City Bank,.* 50 D. P. R. 325.

Alega por último la parte apelante que la corte inferior erró al declarar sin lugar la demanda porque no se había. probado la novación del contrato. Se arguye que la liqui-

dación de la cuenta corriente fué aceptada por el Sr. Ramos sin consentimiento de su esposa, y se afirma con énfasis que esta liquidación constituye una novación de la obligación. Veamos en qué se basa la apelante para sostener esta conclusión. En el contrato de constitución de hipoteca celebrado en 7 de agosto de 1930, se hizo constar por los esposos Ramos Valdés lo siguiente:

"Este crédito se abre por el término de un año a contar desde esta fecha, plazo que vencerá por consiguiente en igual día y mes del año mil novecientos treinta y uno, al vencimiento del cual los esposos Ramos Valdés se obligan y comprometen a satisfacer a la mercantil 'Pizá & Martínez, Inc.' las sumas que se hallen adeudándole por virtud de este contrato, siendo expresamente convenido que dicho plazo de un año podrá ser prorrogado de mutuo acuerdo por los otorgantes y la prórroga o prórrogas que del mismo se acuerden, se considerarán como parte integrante de esta escritura, sujeta a todas las condiciones y estipulaciones de ella."

La liquidación de la cuenta corriente aparece hecha en 20 de octubre de 1931, o sea más de dos meses después de haber vencido el término durante el cual permaneció abierto el crédito concedido a los esposos referidos. De este hecho deduce la parte apelante que se suscribió una nueva obligación y se prorrogó la garantía. Para nosotros resulta claro que si las mercaderías fueron tomadas durante el año en que permaneció abierto el crédito, el hecho de que la liquidación se haya hecho dos meses después no puede afectar ni alterar una obligación contraída para garantizar el pago hasta la suma de $2,000, o parte de la misma que en la liquidación final se hallaren adeudando los esposos Ramos Valdés. El esposo de la demandante, que aparece como socio gestor de la mercantil Ramos Hnos. & Co., Sucrs., y que es además administrador de la sociedad de gananciales, expresó su conformidad con el importe del saldo arrojado por la liquidación de la cuenta corriente; pero aun en la hipótesis de que el esposo no tuviese autoridad para hacer esta liquidación y obligar a su esposa sin su consentimiento, el hecho de que no se haya

liquidado la deuda no es motivo para la cancelación de la hipoteca. La demandante no puede obtener una sentencia a su favor mientras no demuestre que la obligación que sirvió de base a la garantía ha sido satisfecha. No de otro modo podría decretarse la cancelación.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Wolf no intervino.

EN MOCION DE RECONSIDERACION

Marzo 30, 1937

La demandante en este caso solicita la reconsideración de nuestra sentencia, basándose en que el *trustee* de la Corte Federal se incautó de los bienes de Ramos Hnos. & Co. seis meses después de haber sido embargados por la demandada Pizá & Martínez, Inc. La demandante parece preocuparse mucho del momento en que la corte de quiebra se incautó de los bienes, prescindiendo de la fecha en que se radicó la petición de quiebra. No hemos resuelto, por considerarlo innecesario, si la demandante, en caso de haberse embargado los bienes con más de cuatro meses de anterioridad a la petición de quiebra, habría tenido derecho a la cancelación solicitada. Hemos dicho que no surge de los autos la fecha en que esa petición se radicara y que en ausencia de esta prueba debemos presumir que el Juez de Quiebra actuó dentro de su jurisdicción al incautarse de los referidos bienes. No podemos nosotros suplir una prueba que no aparece en los autos ni declarar que el funcionario aludido no actuó dentro de sus atribuciones al apoderarse de los referidos bienes para cubrir, hasta donde fuese posible, las obligaciones de Ramos Hnos. & Co., de cuya firma forma parte la propia demandante. Se arguye que la parte demandada no alegó en la corte inferior que esos bienes hubiesen sido embarga-

'dos dentro de los cuatro meses anteriores a la quiebra. Se nos ocurre que es la demandante, interesada en probar su caso, la que debió alegar y acreditar debidamente la falta de jurisdicción de la Corte de Quiebra, si creyó que este hecho había de favorecerle para obtener el remedio solicitado.

*No ha lugar a la reconsideración.*